**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| **WESTFIELD INSURANCE COMPANY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **JSC HOLDINGS, LLC f/k/a BPC HOLDINGS, LLC, JSC ENTERPRISES, LLC f/k/a BPC ENTERPRISES, LLC, JEREMY SMITH, TINA SMITH (individually and as Trustee of Smith Holdings Land Trust), SMITH HOLDINGS LAND TRUST, and JSMITH NC DESTINATION MANAGEMENT, LLC,** | ) ) ) ) ) ) ) ) ) ) **Case No.** |
| | ) |
| **Defendants.** | ) |
| | ) |
| | ) |

---

## COMPLAINT

---

Plaintiff Westfield Insurance Company ("Westfield" or the "Surety"), by and through counsel, states the following for its Complaint against (1) Defendant JSC Holdings, LLC f/k/a BPC Holdings, LLC, (2) Defendant JSC Enterprises, LLC f/k/a BPC Enterprises, LLC, (3) Defendant Jeremy Smith, (4) Defendant Tina Smith (individually and in her capacity as Trustee of Defendant Smith Holdings Land Trust), (5) Defendant Smith Holdings Land Trust, and (6) Defendant JSmith NC Destination Management, LLC (collectively, the "Defendants"):

## THE PARTIES

1.     Westfield is an Ohio corporation with its principal place of business located at Westfield's corporate headquarters in Westfield Center, Ohio, which is the location from which

Westfield's high-level officers direct, control, and coordinate Westfield's activities. Thus, Westfield is a citizen of Ohio for the purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

2.      Upon information and belief, Defendant JSC Holdings, LLC f/k/a BPC Holdings, LLC is a North Carolina limited liability company, whose former and/or current members have been and remain citizens of North Carolina. Thus, Defendant JSC Holdings, LLC f/k/a BPC Holdings, LLC is a citizen of North Carolina for the purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

3.      Upon information and belief, Defendant JSC Enterprises, LLC f/k/a BPC Enterprises, LLC is a North Carolina limited liability company, whose former and/or current members have been and remain citizens of North Carolina. Thus, Defendant JSC Enterprises, LLC f/k/a BPC Enterprises, LLC is a citizen of North Carolina for the purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

4.      Upon information and belief, Defendant Jeremy Smith is a citizen of North Carolina and is settlor and/or beneficiary of Defendant Smith Holdings Land Trust.

5.      Upon information and belief, Defendant Tina Smith is a citizen of North Carolina and is the Trustee of Defendant Smith Holdings Land Trust (in addition to being a settlor and/or beneficiary of Defendant Smith Holdings Land Trust).

6.      Upon information and belief, Defendant Smith Holdings Land Trust is an express trust formed under the North Carolina Uniform Trust Code, N.C. Gen. Stat. Ann. § 36C-1-101 *et seq.*, whose Trustee and beneficiaries are citizens of North Carolina. Thus, Defendant Smith Holdings Land Trust is a citizen of North Carolina for the purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

7.      Upon information and belief, Defendant JSmith NC Destination Management, LLC is a North Carolina limited liability company, whose members have been and remain citizens of North Carolina. Thus, Defendant JSmith NC Destination Management, LLC is a citizen of North Carolina for the purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

## JURISDICTION AND VENUE

8.      This Court possesses original subject matter jurisdiction over Westfield's claims against the Defendants pursuant to 28 U.S.C. § 1332(a) because the matter in controversy (a) exceeds the sum or value of $75,000.00 exclusive of interest and costs and (b) is between citizens of different states (Ohio Plaintiff and North Carolina Defendants).

9.      This Court possesses the power to declare the respective rights and other legal relations of Westfield and the Defendants as requested herein pursuant to 28 U.S.C. §2201(a).

10.      This Court possesses the authority to award the injunctive relief requested herein pursuant to Rule 65 of the Federal Rules of Civil Procedure.

11.      Venue is proper in the Eastern District of North Carolina under 28 U.S.C. §113(a), 28 U.S.C. § 1391(b)(1), and/or 28 U.S.C. § 1391(b)(2) because the Defendants reside in the Eastern District of North Carolina and a substantial part of the events giving rise to the claims occurred in the Eastern District of North Carolina.

12.      Venue is also proper in the Eastern District of North Carolina in relation to Westfield's claims against Defendant JSC Holdings, LLC f/k/a BPC Holdings, LLC, Defendant JSC Enterprises, LLC f/k/a BPC Enterprises, LLC, Defendant Jeremy Smith, and Defendant Tina Smith (each of those Defendants individually an "Indemnitor" and collectively the "Indemnitors") pursuant to the agreement of indemnity at the center of this action, through which each of the Indemnitors expressly waived, abandoned, and agreed not to assert as a defense "[a]ny objection

to venue, claim of forum non conveniens or any claim that the court in which the action or proceeding is brought lacks personal or subject matter jurisdiction."

## FACTUAL ALLEGATIONS

### The Indemnity Agreement

13.     As a condition of obtaining surety bonds from Westfield and/or in consideration of Westfield refraining from canceling other surety bonds, non-party JSmith Civil, LLC f/k/a Bridgepoint Civil, LLC (the "Contractor"), Indemnitor JSC Holdings, LLC f/k/a BPC Holdings, LLC, Indemnitor JSC Enterprises, LLC f/k/a BPC Enterprises, LLC, Indemnitor Jeremy Smith, and Indemnitor Tina Smith executed the Agreement of Indemnity attached hereto as **Exhibit 1** and dated May 1, 2020 in favor of Westfield (the "Indemnity Agreement").

14.     With respect to the Indemnitors' duty to exonerate and indemnify Westfield from any and all liability for losses and/or expenses, Paragraph 2.a. of the Indemnity Agreement states, in relevant part:

> **Generally**. The Indemnitors shall exonerate and indemnify the Surety from and against any and all liability for losses and/or expenses of whatsoever kind (including, but not limited to, interest, court costs, and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain:
>
> i.   By reason of having executed or procured the execution of the Bonds; or
>
> ii.  By reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of this Agreement; or
>
> iii. In enforcing by suit or otherwise any of the covenants and conditions of this Agreement. The Surety shall at all times have the right to be represented by the attorney of its own choosing.

15.     With respect to the Indemnitors' duty to collateralize Westfield upon demand as soon as liability exists or is asserted against Westfield, Paragraph 2.b. of the Indemnity Agreement states:

**Right to Collateral Deposit**. Whenever liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor, or if deemed necessary by the Surety in the Surety's sole discretion, the Surety may demand, and the Indemnitors shall deposit with the Surety, cash or other collateral to secure the obligations of this Agreement, in kind and amount satisfactory to the Surety in its sole discretion. The Indemnitors acknowledge that the failure of the Indemnitors to deposit with the Surety, immediately upon demand, the sum demanded by the Surety as collateral shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law.

16.     With respect to Westfield's right to specific performance of the Indemnitors' duties to Westfield via injunctive relief, Paragraph 2.c. of the Indemnity Agreement states:

**Right to Injunctive Relief.** The Indemnitors agree that the Surety shall be entitled to injunctive relief for specific performance of any or all of the obligations of the Indemnitors under this Agreement including the obligation to pay to the Surety the sum demanded and hereby waive any claims or defenses to the contrary.

17.     With respect to Westfield's right to indemnity for all payments it makes under the belief that liability, necessity, or expediency existed and the procedure for establishing prima facie evidence of the fact and amount of the Indemnitors' liability to Westfield, Paragraph 2.d. of the Indemnity Agreement states:

**Prima Facie Evidence.** In the event of any payment by the Surety, the Indemnitors further agree that, in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any disbursements made by it regarding the matters herein contemplated under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability of the Indemnitors to the Surety.

18.     With respect to the trust fund nature of the proceeds of all contracts covered by Westfield's bonds and the Indemnitors' duty to use such proceeds to satisfy obligations for which Westfield would be liable under its bonds, Paragraph 4 of the Indemnity Agreement states:

**TRUST FUND**. It is expressly agreed that all monies due and to become due under any contract or contracts covered by the Bonds are deemed to be trust funds, whether in the possession of the Indemnitors or otherwise, for the benefit of and for payment

of all obligations incurred in the performance of the contract and for labor, materials, and services furnished in connection with any such contract or contracts for which the Surety would be liable under any Bond, which trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any Bond, and this Agreement and declaration shall also constitute notice of such trust.

19.     With respect to Westfield's right, at its option and sole discretion, to take possession of and arrange for the completion of any work encompassed by any contracts covered by Westfield's bonds at the Indemnitors' expense, Paragraph 6 of the Indemnity Agreement is entitled "COMPLETION/CURE" and states, in relevant part:

> [T]he Surety shall have the additional right, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession (either temporarily or permanently) of any part or all of the work under any contract or contracts covered by any of the Bonds, and at the expense of the Indemnitors to complete or arrange for the completion of the same, and the Indemnitors shall, promptly upon demand, pay to the Surety all losses and expenses so incurred. In addition to the Surety's rights described above, in the event the Contractor is not fully performing the underlying contract as required above, the Surety shall have the right to correct any such failure without taking possession of the work and the Indemnitors shall, promptly upon demand, pay to the Surety all losses and expenses so incurred.

20.     With respect to Westfield's authority, in its sole and absolute discretion, to advance or lend money to the Contractor and the Indemnitors' obligation to reimburse any such advances/loans, Paragraph 10 of the Indemnity Agreement states:

> **ADVANCES**. The Surety is authorized and empowered, but not obligated, to guarantee loans, to advance or lend to the Contractor any money, which the Surety, in its sole and absolute discretion, may see fit, for the purpose of any contracts referred to in, or guaranteed by any Bond; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Contractor, or guaranteed by the Surety for the purposes of any such contracts, and all costs, and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Contractor to the Surety when due, shall be presumed to be a loss by the Surety for which the Indemnitors shall be responsible, notwithstanding that such money or any part thereof is not so used by the Contractor.

21.     With respect to the Indemnitors' duty to furnish Westfield with free access to the

Indemnitors' books, records, and accounts, Paragraph 11 of the Indemnity Agreement states:

> **BOOKS AND RECORDS.** At any time, and until such time as the liability of the Surety under any and all of the Bond is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts and payments of accounts. If requested by the Surety, the Contractor shall promptly confirm the Surety's rights to any entity or other person referenced above.

22.     With respect to Westfield's right to settle any claim against any of its bonds,

Paragraph 15 of the Indemnity Agreement states:

> **SETTLEMENTS**. The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment related in any way to the Bond or contracts referenced in the Bond; whether arising on behalf of itself or in the name of any Contractor or other Indemnitor hereunder, and any such adjustment, settlement or compromise entered into by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety from the Indemnitors hereunder by reason of such adjustment, settlement or compromise.

23.     With respect to the Indemnitors' waiver of any right to a trial by jury and/or waiver

of any objection to venue, Paragraph 19 of the Indemnity Agreement states:

> **SUITS**. Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising. The Surety shall be entitled to enforce the obligations hereof directly against any Indemnitor, without the necessity of first proceeding against any other particular Indemnitor or Indemnitors. In any proceeding or action relating to any Bond or the enforcement of this Agreement, the Indemnitors, unless requested by Surety to assert said rights, expressly waive, abandon and agree not to assert as a claim, defense or otherwise:
>
> a.     Any right to a trial by jury; or
>
> b.     Any objection to venue, claim of forum non conveniens or any claim that the court in which the action or proceeding is brought lacks personal or subject matter jurisdiction; or

c.      Any claim that the law applicable to any action or proceeding as determined by the Surety is improper or incorrect; or

d.      Exhaustion of remedies.

24.     With respect to the cumulative nature of Westfield's rights the Indemnity Agreement, Paragraph 20 of the Indemnity Agreement states:

> **OTHER INDEMNITY**. The Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of any Bond, from the Indemnitors or others, it being expressly understood and agreed by the Indemnitors that any and all other rights which the Surety may have or acquire against the Indemnitors and/or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

25.     With respect to the procedure for terminating the Indemnitors' obligations to Westfield in writing sent by certified mail and the ineffectiveness of any alleged oral and/or constructive notice of termination, Paragraph 23 of the Indemnity Agreement states:

> **TERMINATION**. This Agreement may be terminated by the Indemnitors to be effective twenty days after receipt of written notice by certified mail by the Surety at its home office at One Park Circle, Westfield Center, Ohio 44251-5001, Attn: Surety Department, but any such notice of termination shall not operate to modify, bar, or discharge the Indemnitors as to the Bonds that may have been executed prior to such effective date, such that all promises, obligations, liens, security interests against Collateral, the Collateral, and the liabilities of the Indemnitors hereunder that arose, accrued, attached and/or perfected prior to such effective date of termination shall survive indefinitely, notwithstanding the giving of such notice of termination by such party. Notice of termination shall operate only with respect to those undersigned upon whose behalf such notice of termination is given. No oral notice to or constructive notice to any agent or employee of the Surety, or any other person, shall constitute notice of termination under this Agreement.

26.     Paragraph 24 of the Indemnity Agreement clarifies that all previously executed Indemnity Agreement remain in full force and effect notwithstanding the execution of subsequent Indemnity Agreement as follows:

> **ENTIRE AGREEMENT**. This Agreement constitutes the entire agreement of the parties and supersedes all prior or contemporaneous communications, and

representations, whether oral or written, except that any other agreements of indemnity between the Surety and the Indemnitors, or any of them, shall remain in full force and effect. The Indemnitors acknowledge that they are relying on no written or oral representation, warranty, or understanding of any kind other than as set forth in this Agreement. This Agreement may not be modified except in writing signed by all parties.

27.     Paragraph 25 of the Indemnity Agreement further clarifies that the Indemnitors may

be bound under multiple indemnity agreements as follows:

**APPLICABILITY**. THE INDEMNITORS HEREBY ACKNOWLEDGE THAT THIS AGREEMENT IS INTENDED TO COVER WHATEVER BONDS (WHETHER OR NOT COVERED BY ANY OTHER AGREEMENT OF INDEMNITY SIGNED AT ANY TIME BY ANY ONE OR MORE OF THE INDEMNITORS, ALL OTHER AGREEMENTS OF INDEMNITY OF ANY KIND BEING SUPPLEMENTAL TO THIS), MAY BE EXECUTED BY THE SURETY ON BEHALF OF THE INDEMNITORS, OR ANY ONE OF THEM (WHETHER CONTRACTING ALONE OR AS A JOINT VENTURER OR CO-VENTURER WITH ANY INDIVIDUAL OR ENTITY WHATSOEVER, WHETHER OR NOT SUCH INDIVIDUAL OR ENTITY IS A PARTY TO THIS AGREEMENT), FROM TIME TO TIME, AND OVER AN INDEFINITE PERIOD OF YEARS, UNTIL THIS AGREEMENT SHALL BE CANCELLED IN ACCORDANCE WITH THE TERMS HEREOF.

28.     Paragraph 27 of the Indemnity Agreement further clarifies that the Indemnity

Agreement cannot be amended except in writing signed by all parties as follows:

**NO WAIVER**. No waiver of any rights hereunder, and no modification or amendment of this Agreement, shall be deemed to be made by the Surety unless the same shall be in writing, duly signed on behalf of the Surety, and each such waiver (if any) shall apply only with respect to the specific instance involved and shall in no way impair the rights of the Surety or the obligations of the Indemnitors to the Surety in any other respect at any other time.

29.     Paragraph 28 of the Indemnity Agreement further confirms that the Indemnitors'

collateral, indemnity, and other obligations extend to and encompass all bonds executed before

and after the effective date of the Indemnity Agreement as follows:

**MISCELLANEOUS**. The Indemnitors agree to be bound by all the terms and conditions of this Agreement with respect to Bonds executed after, and also prior, to the effective date of this Agreement. The Indemnitors further agree that the execution of any Bonds prior to the effective date of this Agreement was in consideration for, and in reliance upon, the agreement of the Indemnitors, at the

time of execution of such Bonds, to execute this Agreement. The Indemnitors, immediately upon becoming aware of any demand, notice, or proceeding to determine or fix any liability with which the Surety may be subsequently charged, shall notify the Surety in writing at the Surety's home office at One Park Circle, Westfield Center, Ohio 44251-5001, Attn: Surety Department.

## The Bonds and Westfield's Liability/Losses Thereunder

30.　　In reliance upon its rights under the Indemnity Agreement (and other agreements of indemnity executed by the Indemnitors and others), Westfield issued certain performance, payment, and/or other surety bonds that named the Contractor as principal (collectively, the "Bonds") and related to various of the Contractor's construction contracts in North Carolina (collectively, the "Bonded Contracts") including, but not limited to, the following Bonds under which Westfield has incurred and continues to incur liability and losses:

| ISSUE DATE | BOND NO. | OWNER/OBLIGEE | PENAL SUM |
|---|---|---|---|
| 03/19/2020 | Performance Bond 056042Q | NCDOT | $15,346,705 |
| 03/19/2020 | Payment Bond 056042Q | NCDOT | $15,346,705 |
| 06/08/2020 | Performance Bond 056043K | Clancy & Theys Construction | $10,259,988 |
| 06/08/2020 | Payment Bond 056043K | Clancy & Theys Construction | $10,259,988 |
| 03/11/2021 | Performance Bond 136335M | Town of Windsor, North Carolina | $1,243,784 |
| 03/11/2021 | Payment Bond 136335M | Town of Windsor, North Carolina | $1,243,784 |
| 03/25/2021 | Performance Bond 136335N | Town of Magnolia, North Carolina | $835,965 |
| 03/25/2021 | Payment Bond 136335N | Town of Magnolia, North Carolina | $835,965 |
| 04/20/2021 | Performance Bond 136335V | Driven Contractors, LLC | $854,601 |
| 04/20/2021 | Payment Bond 136335V | Driven Contractors, LLC | $854,601 |
| 05/18/2021 | Performance Bond 104757M | Lennar Carolinas, LLC | $34,145.00 |
| 05/18/2021 | Payment Bond 104757M | Lennar Carolinas, LLC | $34,145.00 |

| ISSUE DATE | BOND NO. | OWNER/OBLIGEE | PENAL SUM |
|---|---|---|---|
| 05/21/2021 | Performance Bond 136335T | Town of Apex, North Carolina | $15,559.00 |
| 05/21/2021 | Payment Bond 136335T | Town of Apex, North Carolina | $15,559.00 |
| 07/28/2021 | Performance Bond 164584N | New Atlantic Contracting, Inc. | $4,620,172 |
| 07/28/2021 | Payment Bond 164584N | New Atlantic Contracting, Inc. | $4,620,172 |
| 08/09/2021 | Performance Bond 164585J | Shelco, LLC | $2,218,000 |
| 08/09/2021 | Payment Bond 164585J | Shelco, LLC | $2,218,000 |
| 09/08/2021 | Performance Bond 164584Y | New Atlantic Contracting, Inc. | $1,930,076 |
| 09/08/2021 | Payment Bond 164584Y | New Atlantic Contracting, Inc. | $1,930,076 |
| 09/08/2021 | Performance Bond 164585C | New Atlantic Contracting, Inc. | $3,827,224 |
| 09/08/2021 | Payment Bond 164585C | New Atlantic Contracting, Inc. | $3,827,224 |
| 09/21/2021 | Performance Bond 164584X | City of Raleigh, North Carolina | $9,586,280 |
| 09/21/2021 | Payment Bond 164584X | City of Raleigh, North Carolina | $9,586,280 |
| 11/04/2021 | Performance Bond 164585K | City of High Point, North Carolina | $7,416,040 |
| 11/04/2021 | Payment Bond 164585K | City of High Point, North Carolina | $7,416,040 |
| 12/20/2021 | Performance Bond 207337Y | Highland Paving, LLC | $7,724,694 |
| 12/20/2021 | Payment Bond 207337Y | Highland Paving, LLC | $7,724,694 |
| 02/02/2022 | Performance Bond 207338C | Samet Corporation | $11,071,612 |
| 02/02/2022 | Payment Bond 207338C | Samet Corporation | $11,071,612 |
| 03/11/2022 | Performance Bond 207338J | NCDOT | $4,649,993 |
| 03/11/2022 | Payment Bond 207338J | NCDOT | $4,649,993 |
| 04/01/2022 | Performance Bond 207338P | NCDOT | $15,747,596 |
| 04/01/2022 | Payment Bond 207338P | NCDOT | $15,747,596 |
| | | **Total** | **$194,764,868.00** |

31.     In March 2023, representatives of the Contractor, including Indemnitor Jeremy Smith, advised Westfield that the Contractor was encountering significant cash flow issues that were impacting the Contractor's ability to perform under the Bonded Contracts and requested a meeting with Westfield.

32.     As reflected by the Working Progress Report attached hereto as **Exhibit 2**, the Contractor subsequently represented to Westfield that the Contractor's cost of completing its remaining Bonded Contracts (including overhead) would exceed the remaining balances of those Bonded Contracts by $7,552,270.64.

33.     During its subsequent investigation, Westfield learned that the Contractor lacked the financial wherewithal to pay its own employees and/or to complete its remaining Bonded Contracts, which in turn exposed Westfield to significant liability and/or losses under the Bonds and triggered the Indemnitors' collateral, indemnity, and other obligations to Westfield under the Indemnity Agreement.

34.     Accordingly, in an effort to mitigate Westfield's liability/losses under the Bonds (and without any contractual or other obligation to the Contractor or the Indemnitors to do so), Westfield began exercising its rights under the Indemnity Agreement and/or the Bonds including, but not limited to, advancing/loaning amounts to fund the Contractor's ongoing performance under the Bonded Contracts, making direct payments to the Contractor's subcontractors and/or suppliers under the Bonds, and advancing/loaning amounts to fund the Contractor's payroll and other obligations.

35.     Despite Westfield's mitigation efforts, the Contractor was defaulted under various Bonded Contracts.

36.     Despite Westfield's mitigation efforts, the Contractor also defaulted in discharging its indebtedness and/or liabilities to third parties when due including, but not limited to, obligations owed to the Contractor's subcontractors, materialman, equipment providers, and/or laborers relative to the Bonded Contracts.

37.     Despite Westfield's mitigation efforts, the Contractor also failed to fully and timely observe and perform all of the terms and conditions of the Bonded Contracts and/or the Bonds.

38.     Despite Westfield's mitigation efforts, the Contractor also failed to pay obligations incurred in connection with the Bonded Contracts.

39.     Despite Westfield's mitigation efforts, the Contractor petitioned for protection under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of North Carolina, which bankruptcy proceeding bears Case No. 5:23-BK-02734 and remains ongoing.

40.     To date, Westfield has sustained, and continues to sustain, liability for losses and/or expenses (including, but not limited to, interest, court costs, and counsel fees) (a) by reason of having executed the Bonds on behalf of the Contractor, (b) by reason of the Indemnitors' failure to perform or comply with the covenants and conditions of the Indemnity Agreement, and (c) enforcing the covenants and conditions of the Indemnity Agreement in this action, which loss sustained/incurred currently exceeds $34,000,000.00 for which the Indemnitors are liable to Westfield under the Indemnity Agreement.

41.     While Westfield expressly reserves any and all of its rights, remedies, and defenses under the Bonds, the Bonded Contracts, or otherwise, additional liability exists and/or has been asserted against Westfield under the Bonds in excess of $3,500,000.00, in relation to which the

Indemnitors are obligated to deposit with Westfield cash or other collateral in kind and amount satisfactory to Westfield in its sole discretion.

## The Fraudulent Transfers

42.     Upon information and belief, one or more of the Indemnitors including, but not necessarily limited to, Indemnitor Jeremy Smith and Indemnitor Tina Smith, made certain transfers and/or incurred certain obligations that are fraudulent and/or voidable as they relate to Westfield under North Carolina's Uniform Voidable Transactions Act, N.C. Gen. Stat. Ann. § 39-23.1 (the "Voidable Transactions Act").

43.     For example and without limitation, with knowledge of (a) the Contractor's financial inability to pay its own employees and/or to complete its remaining Bonded Contracts and (b) their corresponding collateral, indemnity, and other obligations to Westfield under the Indemnity Agreement, Indemnitor Jeremy Smith and Indemnitor Tina Smith transferred and/or conveyed certain real estate and/or their interest in certain real estate located in Wayne County, North Carolina and generally described as 118 Crosswinds Dr., Greensboro, NC 27530 (the "Crosswinds Property") to Defendant Smith Holdings Land Trust.

44.     The transfer/conveyance of the Crosswinds Property by Indemnitor Jeremy Smith and Indemnitor Tina Smith to Defendant Smith Holdings Land Trust is memorialized in the North Carolina General Warranty Deed filed in the Wayne County, North Carolina Register of Deeds on or about April 17, 2023 and attached hereto as **Exhibit 3**.

45.     With knowledge of (a) the Contractor's financial inability to pay its own employees and/or to complete its remaining Bonded Contracts and (b) their corresponding collateral, indemnity, and other obligations to Westfield under the Indemnity Agreement, Indemnitor Jeremy Smith and Indemnitor Tina Smith also transferred and/or conveyed certain real estate and/or their

interest in certain real estate located in Carteret County, North Carolina and generally described as 207 Smith Street, Atlantic Beach, NC 28512 (the "Smith Street Property") to Defendant Smith Holdings Land Trust.

46.     The transfer/conveyance of the Smith Street Property by Indemnitor Jeremy Smith and Indemnitor Tina Smith to Defendant Smith Holdings Land Trust is memorialized in the North Carolina General Warranty Deed filed in the Carteret County, North Carolina Register of Deeds on or about April 17, 2023 and attached hereto as **Exhibit 4**.

47.     Acting by and through its Trustee, who is Indemnitor Tina Smith upon information and belief, Defendant Smith Holdings Land Trust subsequently transferred and/or conveyed the Smith Street Property and/or its interest in the Smith Street Property to Defendant JSmith NC Destination Management, LLC.

48.     The transfer/conveyance of the Smith Street Property by Defendant Smith Holdings Land Trust to Defendant JSmith NC Destination Management, LLC is memorialized in the North Carolina General Warranty Deed filed in the Carteret County, North Carolina Register of Deeds on or about May 3, 2023 and attached hereto as **Exhibit 5**.

## CAUSES OF ACTION

### Count 1 – Specific Performance Against the Indemnitors (Collateral)

49.     Westfield hereby restates the allegations contained in the foregoing Paragraphs of this Complaint as if fully set forth herein.

50.     Pursuant to Paragraph 2b. of the Indemnity Agreement, whenever liability exists or has been asserted against Westfield, whether or not Westfield shall have made any payment therefor, or if deemed necessary by Westfield in Westfield's sole discretion, Westfield may demand, and the Indemnitors shall deposit with Westfield, cash or other collateral to secure the

obligations of the Indemnity Agreement, in kind and amount satisfactory to Westfield in its sole discretion.

51.     Pursuant to Paragraph 2b. of the Indemnity Agreement, the Indemnitors acknowledged that their failure to deposit with Westfield, immediately upon demand, the sum demanded by Westfield as collateral shall cause irreparable harm to Westfield for which Westfield has no adequate remedy at law.

52.     Pursuant to Paragraph 2c. of the Indemnity Agreement, the Indemnitors expressly agreed that Westfield shall be entitled to injunctive relief for specific performance of any or all of the obligations of the Indemnitors under the Indemnity Agreement including the obligation to pay to Westfield the sum demanded and waived any claims or defenses to the contrary.

53.     While Westfield expressly reserves any and all of its rights, remedies, and defenses under the Bonds, the Bonded Contracts, or otherwise, additional liability exists or has been asserted against Westfield under the Bonds in excess of $3,500,000.00.

54.     To date, however, the Indemnitors have not deposited any collateral with Westfield.

55.     The Indemnitors' failure to deposit collateral with Westfield constitutes a material breach of Paragraph 2b. of the Indemnity Agreement.

56.     As the Indemnitors expressly acknowledged in the Indemnity Agreement, Westfield lacks an adequate remedy at law in relation to the Indemnitors' material breach of Paragraph 2b. of the Indemnity Agreement.

57.     As the Indemnitors also expressly acknowledged in the Indemnity Agreement, the Indemnitors' material breach of Paragraph 2b. of the Indemnity Agreement has caused and continues to cause irreparable harm to Westfield because, among other things, Westfield is being deprived of its bargained for right to receive, hold, and/or utilize acceptable collateral relative to

the liability that has been and/or may be asserted against Westfield by reason of having issued the Bonds.

58. The balance of the equities weighs heavily in favor of entering an injunction and/or judgment in favor of Westfield for specific performance of the Indemnitors' obligations under Paragraph 2b. of the Indemnity Agreement because, among other things, Westfield is merely seeking to enforce the terms of the Indemnity Agreement to which the Indemnitors voluntarily agreed and Westfield continues to be deprived of its bargain-for right to receive, hold, and/or utilize acceptable collateral relative to the claims that have been and/or may be asserted against Westfield relative to the Bonds.

59. Compelling the Indemnitors to collateralize Westfield under Paragraph 2b. of the Indemnity Agreement would strengthen the public interests of enforcing the clear and unambiguous terms of written indemnity agreements in North Carolina, while instilling confidence in the surety industry in North Carolina.

60. Though Westfield expressly reserves any and all of its rights, remedies, defenses, etc. under the Bonds, including the right additional collateral if deemed necessary, Westfield has determined that the deposit of collateral in the amount of $3,5000,000, in cash or other satisfactory to Westfield in its sole discretion, is necessary to secure the Indemnitors' obligations under the Indemnity Agreement.

61. Therefore, Westfield is entitled to the entry of an injunction/judgment (a) compelling the Indemnitors to specifically perform their obligation to deposit collateral in the amount of $3,5000,000, in cash or other kind satisfactory to Westfield in its sole discretion, pursuant to Paragraph 2b. of the Indemnity Agreement and (b) barring the Indemnitors from

transferring, encumbering, or otherwise dissipating any property or assets assigned as collateral to Westfield under the Indemnity Agreement.

### Count II – Specific Performance Against the Indemnitors
#### (Access to Books, Records, and Accounts)

62.     Westfield hereby restates the allegations contained in the foregoing Paragraphs of this Complaint as if fully set forth herein.

63.     Pursuant to Paragraph 11 of the Indemnity Agreement, at any time, and until such time as the liability of Westfield under any and all of the Bonds is terminated, Westfield shall have the right to reasonable access to the books, records, and accounts of the Indemnitors.

64.     Pursuant to Paragraph 22 of the Indemnity Agreement, the Indemnitors agreed that Westfield shall be entitled to injunctive relief for specific performance of any or all of the obligations of the Indemnitors under the Indemnity Agreement and waived any claims or defenses to the contrary.

65.     To date, however, the Indemnitors have failed and/or refused to grant Westfield access to the books, records, and accounts of the Indemnitors.

66.     The Indemnitors' failure to grant Westfield access to the books, records, and accounts of the Indemnitors constitutes a material breach of Paragraph 11 of the Indemnity Agreement.

67.     Westfield lacks an adequate remedy at law in relation to the Indemnitors' material breach of Paragraph 11 of the Indemnity Agreement.

68.     The Indemnitors' material breach of Paragraph 11 of the Indemnity Agreement has caused and continues to cause irreparable harm to Westfield because, among other things, Westfield is being deprived of its bargained for right to access information that is vital to Westfield's investigation and mitigation of its exposure to loss under the Bonds and/or Westfield's

investigation and enforcement of the various obligations the Indemnitors owe to Westfield under the Indemnity Agreement.

69.     The balance of the equities weighs heavily in favor of entering an injunction and/or judgment in favor of Westfield for specific performance of the Indemnitors' duty to furnish Westfield access to their books, records, and accounts as required by Paragraph 11 of the Indemnity Agreement because Westfield is merely seeking to enforce the terms of the Indemnity Agreement to which the Indemnitors voluntarily agreed and Westfield continues to be deprived of its bargained-for right to access information that is vital to Westfield's investigation and mitigation of its exposure to loss under the Bonds and/or Westfield's investigation and enforcement of the various obligations the Indemnitors owe to Westfield under the Indemnity Agreement.

70.     Compelling the Indemnitors to grant Westfield access to their books, records, accounts, etc. as required by Paragraph 11 of the Indemnity Agreement would strengthen the public interest of enforcing the clear and unambiguous terms of written indemnity agreements in North Carolina, while instilling confidence in the surety industry in North Carolina.

71.     Therefore, Westfield is entitled to the entry of an injunction/judgment compelling the Indemnitors to specifically perform their obligation to grant Westfield access to their books, records, accounts, etc.as required by Paragraph 11 of the Indemnity Agreement.

## Count III – Breach of Contract Against the Indemnitors (Damages)

72.     Westfield hereby restates the allegations contained in the foregoing Paragraphs of this Complaint as if fully set forth herein.

73.     Paragraph 2a. of the Indemnity Agreement obligates the Indemnitors to exonerate and indemnify Westfield from and against any and all liability for losses and/or expenses of whatsoever kind (including, but not limited to, interest, court costs, and counsel fees) which

Westfield may sustain (a) by reason of having executed the Bonds, (b) by reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of the Indemnity Agreement, and, (c) in enforcing by suit or otherwise any of the covenants and conditions of the Indemnity Agreement.

74.     Westfields has incurred and continues to incur losses and expenses, including counsel fees, that currently exceed $34,000,000.00 (a) by reason of having executed the Bonds, (b) by reason of the failure of the Indemnitors to perform or comply with the covenants and conditions of the Indemnity Agreement, and (c) in enforcing by suit or otherwise any of the covenants and conditions of the Indemnity Agreement.

75.     Westfield incurred all such losses/expenses under the belief that Westfield was liable for the sums and amounts so disbursed and/or that it was necessary or expedient to make such disbursements under the circumstances.

76.     However, the Indemnitors have failed to exonerate and indemnify Westfield from and against any and all liability for losses and/or expenses as required by Paragraph 2a. of the Indemnity Agreement.

77.     The Indemnitors' failure to exonerate and indemnify Westfield from and against any and all liability for losses and/or expenses constitutes a material breach of Paragraph 2a. of the Indemnity Agreement.

78.     Westfield has been damaged as a result of the Indemnitors' material breach of Paragraph 2a. of the Indemnity Agreement in an amount to be proven at trial, which currently exceeds $34,000,000.00.

79.     Therefore, Westfield is entitled to the entry of a judgment against the Indemnitors in an amount sufficient to fully exonerate and indemnify Westfield from and against any and all

liability for losses and/or expenses, including counsel fees, which amount currently exceeds $34,000,000.00 and will be proven at trial.

**Count IV – Avoidance of Fraudulent Transfers and
Injunctive Relief in Relation Thereto**

80.     Westfield hereby restates the allegations contained in the foregoing Paragraphs of this Complaint as if fully set forth herein.

81.     By virtue of its claims against Indemnitor Jeremy Smith and Indemnitor Tina Smith under the Indemnity Agreement, Westfield possesses "Claims" against Indemnitor Jeremy Smith and Indemnitor Tina Smith as defined by the Voidable Transactions Act.

82.     By virtue of its "Claims" against Indemnitor Jeremy Smith and Indemnitor Tina Smith, (a) Westfield qualifies as a "Creditor" of Indemnitor Jeremy Smith and Indemnitor Tina Smith under the Voidable Transactions Act and (b) Indemnitor Jeremy Smith and Indemnitor Tina Smith qualify as "Debtors" under the Voidable Transactions Act.

83.     Upon information and belief, Indemnitor Jeremy Smith and Indemnitor Tina Smith transferred and/or conveyed the Crosswinds Property and/or their interest in the Crosswinds Property to Defendant Smith Holdings Land Trust with the actual intent to hinder, delay and/or defraud their creditors including, but not limited to, Westfield, which renders the transfer/conveyance to be fraudulent and voidable as to Westfield pursuant to N.C. Gen. Stat. Ann. § 39-23.4(a)(1).

84.     Upon information and belief, Indemnitor Jeremy Smith and Indemnitor Tina Smith transferred and/or conveyed the Smith Street Property and/or their interest in the Smith Street Property to Defendant Smith Holdings Land Trust with the actual intent to hinder, delay and/or defraud their creditors including, but not limited to, Westfield, which renders the

transfer/conveyance to be fraudulent and voidable as to Westfield pursuant to N.C. Gen. Stat. Ann. § 39-23.4(a)(1).

85.     Upon information and belief, the badges of fraud arising from the transfers of the Crosswind Property and the Smith Street Property include, but are not necessarily limited to, the following:

a.  Defendant Smith Holdings Land Trust is an "Insider" under the Voidable Transactions Act;

b.  Indemnitor Jeremy Smith and Indemnitor Tina Smith, as beneficiaries of Defendant Smith Holdings Land Trust and Trustee of Defendant Smith Holdings Land Trust, retained possession and control of the Crosswinds Property and the Smith Street Property;

c.  Indemnitor Jeremy Smith and Indemnitor Tina Smith concealed their transfers/conveyances of the Crosswinds Property and the Smith Street Property from Westfield;

d.  Indemnitor Jeremy Smith and Indemnitor Tina Smith were aware of their collateral, indemnity, and other obligations to Westfield before they transferred/conveyed the Crosswinds Property and the Smith Street Property;

e.  The transfers/conveyances of the Crosswinds Property and the Smith Street Property constituted the transfer/conveyance of substantially all of the assets of Indemnitor Jeremy Smith and Indemnitor Tina Smith;

f.  Indemnitor Jeremy Smith and Indemnitor Tina Smith did not receive consideration that was reasonably equivalent to the value of the Crosswinds Property and/or the Smith Street Property;

g.  Indemnitor Jeremy Smith and Indemnitor Tina Smith were insolvent or became insolvent shortly after the transfers/conveyances of the Crosswinds Property and the Smith Street Property were made;

h.  Indemnitor Jeremy Smith and Indemnitor Tina Smith transferred/conveyed the Crosswinds Property and the Smith Street Property shortly before substantial debts were incurred; and

i.  Indemnitor Jeremy Smith and Indemnitor Tina Smith transferred/conveyed the Crosswinds Property and the Smith Street Property without receiving a reasonably equivalent value in exchange for the transfer/conveyances, and they reasonably

should have believed that they would incur debts beyond their ability to pay as they became due.

86.     Upon information and belief, Indemnitor Jeremy Smith and Indemnitor Tina Smith transferred/conveyed the Crosswinds Property and the Smith Street Property to Defendant Smith Holdings Land Trust without receiving a reasonably equivalent value in exchange and they were engaged or were about to engage in a business and/or transactions for which their remaining assets were unreasonably small in relation to the business and/or transactions, which renders the transfers/conveyances fraudulent and voidable as to Westfield pursuant to N.C. Gen. Stat. Ann. § 39-23.4(a)(2).

87.     Upon information and belief, Indemnitor Jeremy Smith and Indemnitor Tina Smith transferred/conveyed the Crosswinds Property and the Smith Street Property to Defendant Smith Holdings Land Trust without receiving a reasonably equivalent value in exchange and intended to incur, or believed, or reasonably should have believed that they would incur debts beyond their ability to pay as they became due, which renders the transfers/conveyances fraudulent and voidable as to Westfield pursuant to N.C. Gen. Stat. Ann. § 39-23.4(a)(2).

88.     Upon information and belief, Indemnitor Jeremy Smith and Indemnitor Tina Smith transferred/conveyed the Crosswinds Property and the Smith Street Property to Defendant Smith Holdings Land Trust without receiving a reasonably equivalent value in exchange and were insolvent at that time or became insolvent because of transfer/conveyances, which renders the transfer/conveyances to be fraudulent and voidable as to Westfield, whose claims against Indemnitor Jeremy Smith and Indemnitor Tina Smith arose prior to transfer/conveyances, pursuant to N.C. Gen. Stat. Ann. § 39-23.5(a).

89.     Upon information and belief, Indemnitor Jeremy Smith and Indemnitor Tina Smith transferred/conveyed the Crosswinds Property and the Smith Street Property to an insider,

Defendant Smith Holdings Land Trust, for an antecedent debt and were insolvent at the time of the transfers/conveyances and the insider had reasonable cause to believe that Indemnitor Jeremy Smith and Indemnitor Tina Smith were insolvent, which renders the transfers/conveyances to be fraudulent and voidable as to Westfield, whose claims against Indemnitor Jeremy Smith and Indemnitor Tina Smith arose prior to the Initial Transfers, pursuant to N.C. Gen. Stat. Ann. § 39-23.5(b).

90.    By virtue of Indemnitor Jeremy Smith and Indemnitor Tina Smith transferring/conveying the Crosswinds Property and the Smith Street Property to Defendant Smith Holdings Land Trust, which transfers/conveyances were fraudulent and voidable under the Voidable Transactions Act, Westfield is entitled to the various forms of relief set forth in N.C. Gen. Stat. Ann. § 39-23.7 including, but not limited to

   a. an avoidance of the transfer/conveyances to the extent necessary to satisfy Westfield's "Claims" against Indemnitor Jeremy Smith and Indemnitor Tina Smith;

   b. an attachment or other provisional remedy against any proceeds of the Crosswinds Property and the Smith Street Property;

   c. an injunction against further disposition by Indemnitor Jeremy Smith and Indemnitor Tina Smith and/or transferees of the Crosswinds Property and the Smith Street Property including, but not limited to, Defendant Smith Holdings Land Trust and Defendant JSmith NC Destination Management, LLC;

   d. appointment of a receiver to take charge of the assets fraudulently transferred to Defendant Smith Holdings Land Trust and/or Defendant JSmith NC Destination Management, LLC; and

   e. any other relief the circumstances may require.

**Count V – Judgment Against Indemnitor Jeremy Smith and Indemnitor Tina Smith Pursuant to N.C. Gen. Stat. Ann. § 39-23.8(b)(1)(a) and (b)**

91.    Westfield hereby restates the allegations contained in the foregoing Paragraphs of this Complaint as if fully set forth herein.

92.     Upon information and belief, Indemnitor Jeremy Smith and Indemnitor Tina Smith are the persons for whose benefit the Crosswinds Property and the Smith Street Property were transferred/conveyed to Defendant Smith Holdings Plan Trust.

93.     Upon information and belief, Defendant Smith Holdings Land Trust did not take the Crosswinds Property and/or the Smith Street Property in good faith and for a reasonably equivalent value given to Indemnitor Jeremy Smith and Indemnitor Tina Smith.

94.     To the extent transfers/conveyances of the Crosswinds Property and/or the Smith Street Property are avoidable under N.C. Gen. Stat. Ann. § 39-23.7(a)(1), Westfield is entitled to a judgment against Indemnitor Jeremy Smith and Indemnitor Tina Smith, the persons for whose benefit the transfer/conveyances were made, for the value of the assets transferred or the amount necessary to satisfy Westfield's "Claims" against Indemnitor Jeremy Smith and Indemnitor Tina Smith, pursuant to N.C. Gen. Stat. Ann. § 39-23.8(b)(1)(a) and (b).

### Count VI – Judgment Against Smith Holdings Land Trust
### Pursuant to N.C. Gen. Stat. Ann. § 39-23.8(b)(1)(a)

95.     Westfield hereby restates the allegations contained in the foregoing Paragraphs of this Complaint as if fully set forth herein.

96.     Upon information and belief, Defendant Smith Holdings Land Trust is the first transferee of the Crosswinds Property and the Smith Street Property.

97.     Upon information and belief, Defendant Smith Holdings Land Trust did not take the Crosswinds Property and/or the Smith Street Property in good faith and failed to confer any value on Indemnitor Jeremy Smith and Indemnitor Tina Smith in exchange.

98.     To the extent the transfers/conveyances of the Crosswinds Property and/or the Smith Street Property to Defendant Smith Holdings Land Trust are avoidable under N.C. Gen. Stat. Ann. § 39-23.7(a)(1), Westfield is entitled to a judgment against Defendant Smith Holdings

Land Trust, as the first transferee of the Crosswinds Property and/or the Smith Street Property, for the value of the assets transferred or the amount necessary to satisfy Westfield's "Claims" against Indemnitor Jeremy Smith and Indemnitor Tina Smith, pursuant to N.C. Gen. Stat. Ann. § 39-23.8(b)(1)(a).

## COUNT VII – Judgment Against Defendant JSmith NC Destination Management, LLC Pursuant to N.C. Gen. Stat. Ann. § 39-23.8(b)(1)(b)

99.     Westfield hereby restates the allegations contained in the foregoing Paragraphs of this Complaint as if fully set forth herein.

100.     Upon information and belief, Defendant JSmith NC Destination Management, LLC is an immediate transferee of Defendant Smith Holdings Land Trust with respect to the Smith Street Property.

101.     Upon information and belief, Defendant JSmith NC Destination Management, LLC did not take the Crosswinds Property and/or the Smith Street Property in good faith and failed to confer any value on Indemnitor Jeremy Smith, Indemnitor Tina Smith, and/or Defendant Smith Holdings Land Trust in exchange.

102.     To the extent the transfer/conveyance of the Smith Street Property to Defendant Smith Holdings Land Trust and/or Defendant JSmith NC Destination Management, LLC is voidable under N.C. Gen. Stat. Ann. § 39-23.7(a)(1), Westfield is entitled to a judgment against Defendant JSmith NC Destination Management, LLC, as an immediate transferee of Defendant Smith Holdings Land Trust, for the value of the Smith Street Property or the amount necessary to satisfy Westfield's "Claims" against Indemnitor Jeremy Smith and Indemnitor Tina Smith, pursuant to N.C. Gen. Stat. Ann. § 39-23.8(b)(1)(b).

WHEREFORE, PREMISES CONSIDERED, Westfield prays for the following relief:

a. For the issuance of process requiring each of the Defendants to answer Westfield's Complaint;

b. For the entry of an injunction/judgment compelling the Indemnitors to (i) specifically perform their obligation to deposit acceptable collateral with Westfield totaling $3,500,000 pursuant to Paragraph 2b. of the Indemnity Agreement and (ii) barring the Indemnitors from transferring, encumbering, or otherwise dissipating any of the property or assets assigned as collateral to Westfield under the Indemnity Agreement (Count I);

c. For the entry of an injunction/judgment compelling the Indemnitors to specifically perform their obligation to grant Westfield access to their books, records, accounts as required by Paragraph 11 of the Indemnity Agreement (Count II);

d. For the entry of a judgment against the Indemnitors, jointly and severally, in an amount sufficient to fully exonerate and indemnify Westfield from and against any and all liability for losses and/or expenses, including counsel fees, which amount currently exceeds $34,000,000.00 and will be proven at trial (Count III);

e. For the entry of an injunction/judgment granting Westfield the forms of relief set forth in N.C. Gen. Stat. Ann. § 39-23.7 including, but not limited to, (1) an avoidance of the transfer/conveyances of the Crosswinds Property and the Smith Street Property to the extent necessary to satisfy Westfield's "Claims" against Indemnitor Jeremy Smith and Indemnitor Tina Smith, (2) an attachment or other provisional remedy against any proceeds of the Crosswinds Property and the Smith Street Property, (3) an injunction against further disposition by Indemnitor Jeremy Smith and Indemnitor Tina Smith and/or transferees of the Crosswinds Property and the Smith Street Property including, but not limited to, Smith Holdings Land Trust and Defendant JSmith NC Destination Management, LLC, (4) appointment of a receiver to take charge of the assets fraudulently transferred to Defendant Smith Holdings Land Trust, and (5) any other relief the circumstances may require (Count IV);

f. For the entry of a judgment against Indemnitor Jeremy Smith and Indemnitor Tina Smith for the value of the Crosswinds Property and the Smith Street Property or the amount necessary to satisfy Westfield's "Claims" against Indemnitor Jeremy Smith and Indemnitor Tina Smith, pursuant to N.C. Gen. Stat. Ann. § 39-23.8(b)(1)(a) and (b) (Count V);

g. For the entry of a judgment against Defendant Smith Holdings Land Trust, as the first transferee of the Crosswinds Property and/or the Smith Street Property, for the value of the assets transferred or the amount necessary to satisfy Westfield's "Claims" against Indemnitor Jeremy Smith and Indemnitor Tina Smith, pursuant to N.C. Gen. Stat. Ann. § 39-23.8(b)(1)(a) (Count VI);

h. For the entry of a judgment against Defendant JSmith NC Destination Management, LLC, as an immediate transferee of Defendant Smith Holdings Land Trust, for the

value of the Smith Street Property or the amount necessary to satisfy Westfield's "Claims" against Indemnitor Jeremy Smith and Indemnitor Tina Smith, pursuant to N.C. Gen. Stat. Ann. § 39-23.8(b)(1)(b) (Count VII); and

f.  For such further relief, both general and specific, as may be appropriate in accordance with the nature of this cause including, but not limited to, pre-judgment and post-judgment interest.

Respectfully submitted,

/s/ Jeffrey S. Price

Jeffrey S. Price
MANIER & HEROD
1201 Demonbreun Street, Suite 900
Nashville, Tennessee 37203
 (615) 244-0030
Fax: (615) 242-4203
jprice@manierherod.com
N.C. State Bar No. 42590
*Attorneys for Westfield Insurance Company*